IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DR. WARREN G. ROBERTS, M.D., F.A.A.N.S., an individual, and ASPEN SPINE AND NEUROSURGERY CENTER, P.C., an Oregon professional corporation, | Case No. 3:13-cv-01136-SI |
| Plaintiffs, | |
| v. | OPINION AND ORDER |
| LEGACY MERIDIAN PARK HOSPITAL, INC., an Oregon non-profit corporation, d/b/a/ LEGACY MERIDIAN PARK MEDICAL CENTER, an Oregon assumed business name; DR. FRANCISCO X. SOLDEVILLA, M.D., an individual; NORTHWEST NEUROSURGICAL ASSOCIATES, LLC, an Oregon limited liability corporation, DR. ROBERT L. TATSUMI, M.D., an individual; DR. TIMOTHY L. KEENEN, M.D., an individual; PACIFIC SPINE SPECIALISTS, LLC, an Oregon limited liability corporation; and DR. ANDREW B. CRAMER, M.D., an individual, | |
| Defendants. | |

Matthew A. Levin, Lawson E. Fite, and Lauren F. Blaesing, Markowitz, Herbold, Glade & Mehlhaf, P.C., Suite 3000, Pacwest Center, 1211 S.W. Fifth Avenue, Portland, OR 97204. Of Attorneys for Plaintiffs (on briefing).

Mark Gillis McDougal and Gregory Kafoury, Kafoury & McDougal, 320 S.W. Stark Street, Suite 202, Portland, OR 97204. Of Attorneys for Plaintiffs (after substitution of counsel).

Keith S. Dubanevich and Keil M. Mueller, Stoll Stoll Berne Lokting & Shlachter, P.C., 209 S.W. Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Defendants Legacy Meridian Park Hospital, Inc. and Dr. Andrew B. Cramer, M.D.

Robert D. Scholz and Megan L. Ferris, MacMillan Scholz & Marks, P.C., 900 S.W. Fifth Avenue, Suite 1800, Portland, OR 97204. Of Attorneys for Defendants Northwest Neurosurgical Associates, LLC and Dr. Francisco X. Soldevilla, M.D.

Elizabeth E. Lampson and Christopher M. Parker, Davis Rothwell Earle & Xochihua, P.C., 111 S.W. Fifth Avenue, Suite 2700, Portland, OR 97204. Of Attorneys for Defendant Pacific Spine Specialists, LLC.

Karen M. O'Kasey and Calliste J. Korach, Hart Wagner, LLP, 1000 S.W. Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant Dr. Timothy L. Keenen, M.D.

Jeffrey W. Hansen, Stephen R. Rasmussen, and Joseph A. Rohner, IV, Smith Freed & Eberhard P.C., 111 S.W. Fifth Avenue, Suite 4300, Portland, OR 97204, and James L. Dumas and Michael J. Estok, Lindsay Hart Neil & Weigler, LLP, 1300 S.W. Fifth Avenue, Suite 3400, Portland, OR 97201. Of Attorneys for Defendant Dr. Robert L. Tatsumi, M.D.

**Michael H. Simon, District Judge.**

In the Fourth Amended Complaint ("FAC"), Dr. Warren G. Roberts, M.D., F.A.A.N.S.

("Dr. Roberts") and Aspen Spine and Neurosurgery Center, P.C. ("Aspen Spine") (collectively,

"Plaintiffs") assert ten claims against the following seven Defendants: Legacy Meridian Park

Hospital, Inc. ("Meridian Park"), Dr. Andrew B. Cramer ("Dr. Cramer"), Dr. Francisco X.

Soldevilla, M.D. ("Dr. Soldevilla"), Dr. Timothy L. Keenen, M.D. ("Dr. Kennen"), Dr. Robert L.

Tatsumi, M.D. ("Dr. Tatsumi"), Northwest Neurosurgical Associates, LLC  ("Northwest

Neurosurgical"), and Pacific Spine Specialists, LLC ("Pacific Spine"). Plaintiffs allege that

Dr. Roberts was subjected to restriction of his clinical privileges because of racial animosity and

for anticompetitive reasons. Plaintiffs move to compel discovery of medical peer review

PAGE 2 – OPINION AND ORDER

information. Defendants oppose the motion to compel on several grounds. Defendant Meridian

Park moves for a protective order to protect the disclosure of certain information and to produce

discovery in stages. The Court grants Plaintiffs' motion to compel and grants in part Meridian

Park's motion for a protective order.

## BACKGROUND

Dr. Roberts is an African-American neurological surgeon who practices medicine in

Oregon. FAC ¶ 1. Plaintiffs allege that Dr. Roberts was subjected to peer review and issued a

"precautionary" suspension because of Defendants' racial animus and for anticompetitive

reasons. FAC ¶¶ 26-33. Plaintiffs further allege that the surgery for which the peer review was

initiated resulted in an excellent patient outcome and that other neurological surgeons who are

not African-American have never had any sanctions imposed against them by Meridian Park

despite poor patient outcomes. FAC ¶¶ 30, 42. Defendants deny Plaintiffs' allegations and assert

that there were legitimate reasons for the actions taken regarding Dr. Roberts' surgical

privileges.

As part of discovery in this action, Plaintiffs have requested complete documentation of

all medical peer review investigations or analyses over the past ten years of Dr. Roberts as well

as of Defendants Dr. Tatsumi, Dr. Soldevilla, and Dr. Kennan. Plaintiffs argue that this

information is necessary to assess whether Dr. Roberts was treated differently from similarly

situated physicians who are not African-American. Specifically, Plaintiffs ask the Court to

overrule Defendants' objections made in response to the following discovery requests:

- Plaintiffs' Requests for Production Nos. 2-3, 16-17, 19-22, 24-26, 29, 32-43, 49-
  52, and 54-55, and Interrogatory Nos. 1-3, 5-7, and 9-12 to Meridian Park

- Plaintiffs' Requests for Production Nos. 7, 16, 19, 24, 25, 29-30, 32-33, and 36-37, and Interrogatory No. 4 to Dr. Soldevilla and Northwest Neurosurgical

- Plaintiffs' Requests for Production Nos. 1, 5-6, 11, and 22-23, and Interrogatory No. 4 to Dr. Tatsumi

- Plaintiffs' Request for Production No. 22 and Interrogatory No. 4 to Dr. Kennen

- Plaintiffs' Requests for Production Nos. 3, 5, 6, 10-13, 16, 21-22, 26-27, 29-30, and 33 to Pacific Spine

Defendants object to the production of this evidence, arguing that this evidence is protected by a "peer review privilege." Dr. Kennen, Dr. Tatsumi, Dr. Soldevilla, Pacific Spine, and Northwest Neurosurgical also object on the grounds that this evidence is not likely to lead to relevant information and that the discovery requests are overbroad.

In response to the motion to compel filed by Plaintiffs, Defendant Meridian Park also filed a motion for a protective order. Emphasizing the importance of protecting confidential peer review information, Meridian Park asks the Court to review the production of the requested material *in camera* and to stagger discovery. Plaintiffs object to Meridian Park's motion.

## STANDARDS

### A.  Motion to Compel

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivelged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) is construed broadly. The Supreme Court interpreted Rule 26(b)(1) to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Such a broad scope of discovery, however, must be balanced against the burden

or expense of the particular discovery sought, considering its likely benefit, "the needs of the

case, the amount in controversy, the parties' resources, the importance of the issues at stake in

the action, and the importance of the discovery in resolving the issues." Fed. R. Civ.

P. 26(b)(2)(C)(iii).When a party fails to provide requested discovery that falls within the scope of

Rule 26(b)(1), Rule 37(a)(1) allows the requesting party—after giving notice to other parties and

attempting to confer—to "move for an order compelling disclosure or discovery."  Fed. R. Civ.

P. 37(a)(1).

**B.  Motion for Protective Order**

Protective orders are governed by Rule 26(c). Fed. R. Civ. P. 26(c). Although "the fruits

of pretrial discovery are, in the absence of a court order to the contrary, presumptively public,"

*Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (citation and quotation marks

omitted), Rule 26(c) confers "broad discretion on the trial court to decide when a protective order

is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467

U.S. 20, 36 (1984). Rule 26(c) provides in relevant part:

> The court may, for good cause, issue an order to protect a party or
> person from annoyance, embarrassment, oppression, or undue
> burden or expense, including one or more of the following:
>
> > (A) forbidding the disclosure or discovery;
> >
> > (B) specifying terms, including time and place, for the
> >     disclosure or discovery;
> >
> > (C) prescribing a discovery method other than the one
> >     selected by the party seeking discovery;
> >
> > (D) forbidding inquiry into certain matters, or limiting the
> >     scope of disclosure or discovery to certain matters; . . . .

Fed. R. Civ. P. 26(c). "A party asserting good cause bears the burden, for each particular

document it seeks to protect, of showing that specific prejudice or harm will result if no

protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

<b>PLAINTIFFS' MOTION TO COMPEL</b>

## A.  Federal Common Law

Where a Plaintiff brings both federal question claims and pendent state law claims, as is the case here, the federal common law of privilege applies. Fed. R. Evid. 501 Advisory Committee Note (stating that in federal question cases, "federally evolved rules on privilege should apply since it is [f]ederal policy which is being enforced," and that "[i]t is also intended that the [f]ederal law of privileges should be applied with respect to pendent [s]tate law claims when they arise in a [f]ederal question case."); *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839-40 (9th Cir. 2005) (applying federal common law of privileges to a claim of medical peer review privilege over both federal question and pendant state law claims). In the pending action, Plaintiffs assert claims under federal antitrust and civil rights laws, including 15 U.S.C. §§ 1, 2 and 42 U.S.C. §§ 1985, 1986, as well as several state law claims. FAC ¶¶ 102-124. Defendants removed this matter to federal court and thereby "deliberately chose a federal forum to litigate this suit." *Agster*, 422 F.3d at 839. The federal common law of privilege applies.

### 1.  Peer Review Privilege

The Ninth Circuit does not recognize a federal peer review privilege and expressly has declined to create a one. *Agster*, 422 F.3d at 839. In *Agster*, the Ninth Circuit held that there was no federal peer review privilege and affirmed an order compelling the production of a mortality peer review conducted by correctional health services staff after a prisoner died while in state custody. *Id.* at 837-38. The Ninth Circuit explained that it was "reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Id.* at 839 (citation and quotation marks omitted) (noting that

Congress provided for immunity to participants in a medical peer review under the Health Care Quality Improvement Act, 28 U.S.C. §§ 11101-11152, but did not enact a privilege covering disclosure of the documentation of the peer review process).

District courts in the Ninth Circuit have consistently followed *Agster*. *See, e.g.*, *Williams v. Univ. Med. Ctr.*, 760 F. Supp. 2d 1026, 1029 (D. Nev. 2010); *Love v. The Permanente Med. Grp.*, 2013 WL 4428806 at *2 (N.D. Cal. Aug. 15, 2013). Moreover, the Fourth Circuit and Seventh Circuit have also explicitly rejected an invitation to create a federal medical peer review privilege. *Virmani v. Novant Health Inc.*, 259 F.3d 284, 285-86 (4th Cir. 2001); *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1059-60 (7th Cir. 1981).

The Ninth Circuit's holding in *Agster* is consistent with Supreme Court dicta. In its opinion rejecting the creation of a federal academic peer review privilege, the Supreme Court noted that "the peer review material itself must be investigated to determine whether the evaluations are based in discrimination." *Univ. of Pa. v. EEOC*, 493 U.S. 182, 193 (1990). The Court reasoned, "if there is a 'smoking gun' to be found that demonstrates discrimination in tenure decisions, it is likely to be tucked away in peer review files." *Id.* As with academic peer review, in medical peer review situations, the materials used to conduct a peer review must be evaluated to determine whether decisions were made for discriminatory reasons. The rationale articulated by the Supreme Court in *University of Pennsylvania* thus provides additional support for the Ninth Circuit's decision in *Agster* to reject the invocation of a medical peer review privilege.

### 2.   The Court Will Not Recognize a New Privilege

Defendants also urge the Court to establish a new medical peer review privilege under federal common law. Citing *Trammel v. United States*, Defendants note that Federal Rule of Evidence 501 provides courts "with the flexibility to develop rules of privilege on a case-by-case

basis." 445 U.S. 40, 47 (1980) (citation and quotation marks omitted). Defendants argue that *Agster* is not binding precedent because it was limited to medical peer review in a prison setting. The court in *Agster* noted the unique "demands for public accountability" in the prison context. *Agster*, 422 F.3d at 839. Because no such unique circumstances exist in this case, Defendants argue, the Court is not bound by the Ninth Circuit's decision.

Defendants rely upon several district court cases outside of the Ninth Circuit that have recognized a federal medical peer review privilege, *Cohn v. Wilkes Gen. Hosp.*, 127 F.R.D. 117 (W.D.N.C. 1989) and *Weekoty v. United States*, 30 F. Supp. 3d 1343 (D.N.M. 1998). *See also Doe v. St. Joseph's Hosp. of Fort Wayne*, 113 F.R.D. 677 (N.D. Ind. 1987) (recognizing partial privilege). In these cases, the district courts noted the important policy concerns for protecting peer reviewed medical information. These courts also relied upon the fact that all states appear to recognize a medical peer review privilege.

The Court has considered Defendants' arguments but declines to recognize a new privilege in federal common law. The Court finds that the Ninth Circuit's holding and reasoning in *Agster* apply to the facts in this case. Moreover, the Supreme Court's reasoning in *University of Pennsylvania* that any "smoking gun" of discrimination in the academic peer review process would likely be found in the peer review records is also persuasive regarding the discovery of alleged discrimination in the medical peer review context. 493 U.S. at 193. Because this Court declines to create a new privilege and because the Ninth Circuit has not recognized a peer review privilege under federal common law, no such federal privilege protects from disclosure in discovery the peer review documents at issue in this case.

## B. Meridian Park's Bylaws

Defendants also argue that even if no federal peer review privilege exists, Plaintiffs have contractually agreed to be bound by Oregon's medical peer review privilege statute, regardless of

the forum in which any dispute was litigated. Defendants base this argument in Dr. Roberts'

contractual agreement to be bound by the Meridian Park Medical Staff Bylaws ("Bylaws").

Plaintiffs respond that even if Oregon's medical peer review privilege were to apply, Oregon law

expressly exempts medical peer review records from disclosure only in certain situations that do

not apply in the pending case.

### 1. Meridian Park's Bylaws Refer to Oregon Privileges

Meridian Park's Bylaws state that Meridian Park Hospital "shall maintain all information

it receives from third parties in strict confidence, and the release of any such information shall be

in accordance with applicable law, including but not limited to, Or. Rev. Stat. § 41.675," and that

"[n]o party shall disclose this information to any third party without the express written consent

of the others." The Bylaws further provide: "All minutes, reports, recommendations,

communications, and actions made or taken pursuant to these bylaws are deemed to be covered

by the provisions of Or. Rev. Stat. § 41.675 or the corresponding provisions of any subsequent

federal or state statute providing protection to peer review or related activities."

Defendants argue that Plaintiffs are bound by the Bylaws, and thus the Oregon medical

peer review privilege referenced within, because Dr. Roberts on two occasions signed forms

acknowledging that he had been informed of and agreed to be bound by the Bylaws. Defendants

cite *Tyson v. Oregon Anesthesiology Group*, 2007 WL 1731475 (D. Or. June 17, 2007), a case in

this district, where the court held that a doctor who signed a "confidentiality policy" that

incorporated Or. Rev. Stat. § 41.675 was bound by that statute in federal court. *Id.* at *9-*25.

Plaintiffs respond that *Tyson* is distinguishable because it was not a discovery decision and

because the court was only commenting in dicta about a confidentiality provision of the

hospital's bylaws. For the reasons that follow, this Court does not need to reach the issue of

whether or not the Bylaws are binding on Plaintiffs.

### 2. Oregon Statutory Privilege Exception

Plaintiffs argue that even if they were bound by the Bylaws, the Oregon medical peer review statutory privilege does not apply to the facts of this case. Or. Rev. Stat. § 41.675 affords broad protection to medical staff documents used or created in the peer review process. Or. Rev. Stat. §§ (1)-(3). Or. Rev. Stat. § 41.675(3) provides in relevant part: "All data shall be privileged and shall not be admissible in evidence in any judicial, administrative, arbitration or mediation proceeding." *Id.* "Data" is defined as "all oral communications or written reports to a peer review body, and all notes or records created by or at the direction of a peer review body." Or. Rev. Stat. § 41.675(2).

The Oregon medical peer review privilege statute, however, also includes an express exception to this privilege. The exception states:

> Subsection (3) of this section shall not apply to proceedings in which a health care practitioner contests the denial, restriction or termination of clinical privileges by a health care facility or the denial, restriction or termination of membership in a professional society or any other health care group. However, any data disclosed in those proceedings shall not be admissible in any other judicial, administrative, arbitration or mediation proceeding.

Or. Rev. Stat. § 41.675(6). Because Dr. Roberts in this lawsuit is contesting, or challenging, the "restriction" of his clinical privileges, the statutory exception to Oregon's medical peer review privilege applies in this case.

Defendants respond that even if the exception contained in Or. Rev. Stat. § 41.675(6) applies to Dr. Roberts, it does not apply to the data relating to the peer review of the other physician Defendants in this case, specifically Dr. Soldevilla, Dr. Tatsumi, and Dr. Keenen. The language of the statute, however, does not support this distinction. Subsection (6) of the statute states that the privilege "shall not apply to proceedings in which a health care practitioner contests the . . . restriction . . . of clinical privileges." Or. Rev. Stat. § 41.675(6). The case before

PAGE 10 – OPINION AND ORDER

this Court is a "proceeding" in which Dr. Roberts is contesting the restriction of his clinical privileges. Therefore, the broad peer review privilege of subsection (3) does not apply in this case. Without subsection (3), there is no Oregon-based privilege for the peer review information of Dr. Roberts, Dr. Soldevilla, Dr. Tatsumi, or Dr. Keenen. Thus, even if the Bylaws were binding on Plaintiffs, which this Court will assume without deciding, thereby making the Oregon privilege generally applicable here, the discovery sought by Plaintiffs nevertheless falls within the express exception provided in Or. Rev. Stat. § 41.675(6).

## C. Defendants' Other Objections

Defendants Dr. Kennen, Dr. Tatsumi, Dr. Soldevilla, Pacific Spine, and Northwest Neurosurgical also object on the grounds that Plaintiffs' requested discovery is not relevant or reasonably calculated to lead to the discovery of relevant evidence and that the requests are overbroad. The Court has reviewed these objections and, subject to the limitations set forth below, the Court finds that these objections are without merit.

## MERIDIAN PARK'S MOTION FOR PROTECTIVE ORDER

Meridian Park emphasizes the important policy considerations behind the medical peer review privilege and asks that the discovery requested by Plaintiffs be staggered and reviewed by the Court *in camera*. Defendants suggest that first Dr. Roberts' own peer review documents should be produced, then the documents regarding Defendant physicians, and that no discovery should be compelled regarding non-party physicians. Plaintiffs object to the *in camera* review of discovery and argue that the information regarding the peer reviews of Dr. Roberts and the Defendant physicians should be produced together. Plaintiffs do not object to staggering the production of non-party physicians' peer review, but argue that this information might become relevant and discoverable at a later time.

PAGE 11 – OPINION AND ORDER

The Court agrees that some staggering of the discovery of peer review information is appropriate. Because Plaintiffs allege that Dr. Roberts was treated differently from similarly situated physicians based on his race, the first round of discovery shall include the peer review information for Dr. Roberts and the other neurological surgeons with clinical privileges at Meridian Park (Dr. Soldevilla, Dr. Tatsumi, and Dr. Keenen) during the relevant time period. If at some future time, Plaintiffs seek to discover peer review information of other non-party or non-neurosurgeon physicians, Plaintiffs will need to make a specific showing of (1) why that discovery would be reasonably likely to lead to relevant evidence, and (2) how much it will cost to review and redact confidential personal information from these documents.

The Court declines to order an *in camera* review of the first round of peer review discovery. The Court assumes that the parties will treat this discovery in full compliance with the two protective orders already issued in this case. Absent any evidence to the contrary, these protective orders should be adequate to protect any confidential, personal data.

## CONCLUSION

The Court GRANTS Plaintiffs' motion to compel (ECF 77) and GRANTS IN PART Defendant Meridian Park's motion for a protective order (ECF 91).

**IT IS SO ORDERED**.

DATED this 25th day of April, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 12 – OPINION AND ORDER