IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **WARREN G. ROBERTS, M.D., F.A.A.N.S.,** an individual, and **ASPEN SPINE AND NEUROSURGERY CENTER, P.C.,** an Oregon professional corporation, | Case No. 3:13-cv-01136-SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **LEGACY MERIDIAN PARK HOSPITAL, INC.,** an Oregon non-profit corporation, d/b/a/ **LEGACY MERIDIAN PARK MEDICAL CENTER,** an Oregon assumed business name; **FRANCISCO X. SOLDEVILLA, M.D.,** an individual; **NORTHWEST NEUROSURGICAL ASSOCIATES, LLC,** an Oregon limited liability corporation, **ROBERT L. TATSUMI, M.D.,** an individual; **TIMOTHY L. KEENEN, M.D.,** an individual; **PACIFIC SPINE SPECIALISTS, LLC,** an Oregon limited liability corporation; and **ANDREW B. CRAMER, M.D.,** an individual, | |
| Defendants. | |

PAGE 1 – OPINION AND ORDER

Micah D. Fargey, FARGEY LAW PC, 5 Centerpointe Drive, Fourth Floor, Lake Oswego, OR 97035. Of Attorneys for Plaintiffs.

Keith S. Dubanevich and Keil M. Mueller, STOLL STOLL BERNE LOKTING & SHLACHTER, P.C., 209 S.W. Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Defendants Legacy Meridian Park Hospital, Inc. and Andrew B. Cramer, M.D.

Robert D. Scholz and Megan L. Farris, MACMILLAN SCHOLZ & MARKS, P.C., 900 S.W. Fifth Avenue, Suite 1800, Portland, OR 97204. Of Attorneys for Defendants Northwest Neurosurgical Associates, LLC and Francisco X. Soldevilla, M.D.

Elizabeth E. Lampson and Christopher M. Parker, DAVIS ROTHWELL EARLE & XOCHIHUA, P.C., 111 S.W. Fifth Avenue, Suite 2700, Portland, OR 97204. Of Attorneys for Defendant Pacific Spine Specialists, LLC.

Karen M. O'Kasey and Cally J. Korach, HART WAGNER, LLP, 1000 S.W. Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant Timothy L. Keenen, M.D.

Jeffrey W. Hansen, Stephen R. Rasmussen, and Joseph A. Rohner, IV, SMITH FREED & EBERHARD, P.C., 111 S.W. Fifth Avenue, Suite 4300, Portland, OR 97204, and James L. Dumas and Michael J. Estok, LINDSAY HART, LLP, 1300 S.W. Fifth Avenue, Suite 3400, Portland, OR 97201. Of Attorneys for Defendant Robert L. Tatsumi, M.D.

**Michael H. Simon, District Judge.**

Defendants assert that this lawsuit has been fully settled by agreement reached with Plaintiffs' then-counsel acting within the scope of his authority. Defendants jointly move to enforce that settlement agreement and ask the Court to dismiss Plaintiffs' claims with prejudice. Dkt. 123. Plaintiffs oppose Defendants' joint motion. For the reasons that follow, Defendants' joint motion is GRANTED. This case is dismissed.

## BACKGROUND

Plaintiff, Warren G. Roberts, M.D., is a neurological surgeon and the owner of Plaintiff Aspen Spine and Neurosurgery Center, P.C. In Plaintiffs' Fourth Amended Complaint, Plaintiffs allege claims of tortious interference with economic relations, breach of contract, intentional infliction of emotional distress, racial discrimination in violation of state and federal law, and

conspiracy to restrain trade and attempted monopolization in violation of state and federal antitrust laws.

According to Defendants, on October 17, 2014, Plaintiffs, through Plaintiffs' then-counsel Mark McDougal, offered to settle this lawsuit by dismissing all claims against Defendant Timothy L. Keenen, M.D. in exchange for a waiver of any fees and costs. Defendants further contend that on October 20, 2014, Defendant Keenen, through counsel, accepted Plaintiffs' offer. Defendants also contend that between October 17, 2014, and October 20, 2014, similar settlement offers were extended by Plaintiffs' then-counsel to all Defendants, the only material terms of which were the exchange of mutual releases of all claims, counterclaims, and demands for fees and costs. Defendants add that they all accepted the terms of Plaintiffs' settlement offer, with the sole exception of Defendant Francisco X. Soldevilla, M.D., who requested, as an additional settlement term, that he receive a letter signed by Dr. Roberts or his counsel confirming that no money was paid or other consideration was given by Dr. Soldevilla in exchange for the mutual releases. According to Defendants, Plaintiffs' then-counsel stated that he had no objection to writing such a letter for Dr. Soldevilla.

Defendants further state that on October 29, 2014, they sent a draft stipulation of dismissal to Plaintiffs' then-counsel, Mr. McDougal. According to Defendants, Mr. McDougal reported that he approved the form of the stipulation but added that he was scheduled to meet with his client Dr. Roberts on November 14, 2014, and that Defendants' counsel were not yet authorized to file the stipulation of dismissal until after Mr. McDougal met with Dr. Roberts. Defendants further assert that on November 17, Mr. McDougal told Defendants' counsel that he soon either would authorize Defendants to file the stipulation or would move to withdraw as Plaintiffs' counsel.

On November 17, 2014, Mr. McDougal and his law firm, Kafoury & McDougal, moved to withdraw as Plaintiffs' counsel and for a stay of discovery. In his supporting declaration, Mr. McDougal states:

> 1. The firm of Kafoury & McDougal agreed to represent Dr. Roberts on a contingent fee basis in the above-entitled litigation. The law firm of Kafoury & McDougal has expended considerable hours in representing Dr. Roberts and Aspen Spine and Neurosurgery Center, PC.
>
> 2. Irreconcilable differences have arisen between Dr. Roberts and the law firm of Kafoury & McDougal.
>
> 3. Kafoury & McDougal has been advancing costs in this matter. Unless withdrawal is granted, Kafoury & McDougal would be required to continue to advance costs and hundreds of hours of contingent attorney time. It is anticipated that numerous experts would be required, and that there will be numerous depositions. All of these costs and attorney time would have to be borne by Kafoury & McDougal pending the outcome of this case, pursuant to the terms of their standard contingency fee agreement.
>
> 4. Recent events involving the parties and negotiation of potential resolution of this case have created these irreconcilable differences.
>
> 5. Plaintiffs have been advised of plaintiffs' counsel's instant motion to withdraw from this case.
>
> 6. On October 17, the plaintiffs made a settlement offer. All defendants have responded. Plaintiffs and plaintiffs' counsel have irreconcilable differences with regard to the path of this litigation.
>
> 7. Depositions in this case have not yet begun. Depositions were currently scheduled to start on Wednesday, November 19.
>
> 8. Because of the settlement posture, Dr. Roberts has not been prepared for his deposition. The current irreconcilable differences between Dr. Roberts and his counsel would make deposition preparation (even assuming there was adequate time) extremely difficult.
>
> 9. The final facts and circumstances giving rise to this motion to withdraw occurred on Friday, November 14, in the afternoon. This motion is being drafted and filed on Monday morning, November 17.

Dkt. 119. On November 18, 2014, the Court granted the motion to withdraw and to stay discovery, as filed by Plaintiffs' then-counsel.

On December 15, 2014, Defendants filed a Joint Motion to Enforce Settlement Agreement. Dkt. 123. Plaintiffs requested additional time to retain new counsel and respond to Defendants' motion, which was allowed. On January 12, 2015, Plaintiffs' new counsel, Mr. Fargey, entered his appearance for Plaintiffs and filed Plaintiffs' opposition to Defendants' Joint Motion to Enforce Settlement Agreement.

In support of Plaintiffs' opposition to Defendants' Joint Motion to Enforce Settlement Agreement, Plaintiffs submitted the Declaration of Dr. Roberts. In his declaration, Dr. Roberts states:

> 1. I am one of the plaintiffs in this matter and owner of the other plaintiff, Aspen Spine and Neurosurgery Center, P.C. ("Aspen Spine"). I make this declaration in opposition to Defendants' "Joint Motion to Enforce Settlement Agreement." I have personal knowledge of the facts set forth below and, if called to testify, could and would testify competently to these facts.
>
> 2. I never offered to settle this lawsuit or accepted any settlement proffered by any of the defendants. I do not know why the defendants either believe or purport to believe this case is or was ever settled. It is not.
>
> 3. Dr. George Brown is, I understand, the CEO of Legacy Health System and a fellow African-American medical doctor. Dr. Brown and I are peers. I have had a number of conversations with him about the subject matter of this lawsuit and the challenges to my practice I believe were caused by the defendants' wrongful actions.
>
> 4. Right around October 17, 2014, I had a brief conversation with Dr. Brown by telephone. I told him that I was considering dropping this lawsuit. I am not sure why exactly I said this, but I recall being drained by this lawsuit, my relationship with my former counsel, and the toll of the defendants' wrongful actions.
>
> 5. Dr. Brown is not a party to this case and I did not believe that the substance of our conversation would be relayed to anyone. I

PAGE 5 – OPINION AND ORDER

did not ask him to tell anyone, let alone one or all of the defendants.

6. I only told Dr. Brown that I was thinking about dropping the lawsuit (or considering it, I'm not sure) – but definitely not that I wanted to, offered to, or would settle, drop, or walk away from this lawsuit. I would never have made such an offer to the defendants.[1]

7. Additionally, I certainly did not state that Aspen Spine would settle or that I would attempt to settle on its behalf.

8. Mark McDougal, my attorney, then learned that I had spoken to Dr. Brown. I did not in any way say or indicate that he should then attempt to offer or effectuate any settlement.

9. I later discovered that Mr. McDougal, without my consent or knowledge, told all of the defendants that I offered to settle the case for nothing more than the defendants' agreement to drop their counterclaims, which I understand are only for attorney fees. I do not understand why he did this; I did not ask or authorize him to do so.

10. When Mr. McDougal told me of this, I was shocked. I never offered or intended, explicitly, implicitly, actually, or apparently, any settlement of this case to the defendants.

11. The defendants' actions have caused my practice to lose millions of dollars in economic damages, and I experienced significant non-economic damages from their actions. I would never agree or offer to settle this case for a walkaway.

---

[1] Dr. Roberts was responding to a declaration submitted by outside counsel for Defendant Legacy Meridian Park Hospital, Inc. ("Legacy"), in which Legacy's outside counsel states that he spoke with Legacy's General Counsel, Rob DeWitt, who reported hearing from Legacy's Chief Executive Officer, Dr. George Brown, that Dr. Roberts had "told Dr. Brown that he had decided to drop his case." *See* Dkt. 125 at ¶ 5. These statements contain inadmissible hearsay within hearsay. Fed. R. Evid. 805. With their Reply in Support of Defendants' Joint Motion to Enforce Settlement Agreement (Dkt. 146), Defendants filed the Declaration of George J. Brown, M.D. in Support of Defendants' Joint Motion to Enforce Settlement Agreement. (Dkt. 147.) In that declaration, Dr. Brown recites what he says he was told directly by party-opponent Dr. Roberts. This is not hearsay. Fed. R. Evid. 801((d)(2). In Dr. Roberts' own declaration, however, he explains that he has a different recollection of his conversation with Dr. Brown. *See* Dkt. 135. The Court does not rely on either version for any conclusions reached in this Opinion and Order.

> 12. I understand the defendants are concerned that depositions were postponed because of their supposed belief that the case would be or was settled. If this is a concern, I will agree to grant additional time to finish discovery in this case.

Dkt. 135.

After receiving Dr. Roberts's declaration, Defendants filed a Joint Motion to Declare Partial Waiver of Attorney-Client Privilege. Plaintiffs opposed that motion. The Court granted that motion in part. Dkt. 144. The Court ordered:

> Within seven days from the date of this Opinion and Order, Dr. Roberts shall notify the Court and the parties whether he intends to continue to rely on his statement that he did not authorize his then counsel to extend the alleged settlement offers (or to accept Dr. Soldevilla's counter offer). If Dr. Roberts intends to continue to assert that position, Defendants may serve a subpoena duces tecum on Plaintiffs' former-counsel, Mr. McDougal, and may take the deposition of Mr. McDougal, all in accordance with the contingencies and limitations set forth in this Opinion and Order. In lieu of such a deposition, however, upon request by any party, the Court will hold an evidentiary hearing during which Mr. McDougal may be examined by all parties, also in accordance with the limitations set forth in this Opinion and Order. If any party requests such an evidentiary hearing in lieu of a deposition, the parties shall coordinate the date and time of such a hearing with the Courtroom Deputy.

*Id*. at 18. In compliance with the Court's Order, Plaintiffs timely filed Plaintiffs' Notice of Withdrawal of Declaration of Dr. Warren G. Roberts in Opposition to Defendants' "Joint Motion to Enforce Settlement Agreement." Dkt. 145. In that notice, Plaintiffs stated that "Plaintiffs hereby withdraw from consideration and reliance the Declaration of Plaintiff Dr. Warren G. Roberts in Opposition to Defendants' 'Joint Motion to Enforce Settlement Agreement.'" *Id*. at 2. Plaintiffs also noted that "Plaintiffs continue to otherwise oppose Defendants' 'Joint Motion to Enforce Settlement Agreement.'" *Id*.

PAGE 7 – OPINION AND ORDER

**DISCUSSION**

In Plaintiffs' Opposition to Defendants' Motion to Enforce Settlement, Plaintiffs offer three arguments. First Plaintiffs argue that Plaintiffs' then-counsel, Mr. McDougal, lacked authority to settle or offer to settle this case. Second, Plaintiffs state that Defendants' reliance on *Rhoades v. Beck*, 260 Or. App. 569 (2014), was misplaced. Third, Plaintiffs assert that the "counterproposal" from Dr. Soldevilla rejected and invalidated any proposed settlement agreement before acceptance by all parties. These arguments are addressed in turn.

**A. Mr. McDougal's Settlement Authority**

Defendants present evidence that Plaintiffs, through their then-counsel, Mr. McDougal, made an unsolicited offer on October 17, 2014, to settle their claims against each Defendant in exchange for a mutual release of all claims, counterclaims, and demands for fees and costs. Dkt. 124, ¶ 2 (regarding Defendant Dr. Keenen); Dkt. 125, ¶ 4 (regarding Defendants Legacy and Dr. Cramer);[2] Dkt. 127, ¶ 2 (regarding Defendant Dr. Tatsumi); Dkt. 128, ¶3 (regarding Defendants Dr. Soldevilla and Northwest Neurological Associates LLC).[3] Plaintiffs'

---

[2] Although Dkt. 125 states in ¶ 1 that the declarant is counsel for Defendants "Legacy Meridian Park Hospital and Dr. Andrew Olson," that is clearly a typographical error. The declarant is counsel for Defendants Legacy Meridian Park Hospital and Dr. Andrew Cramer. *See* Dkt. 38. Dr. Andrew Olson is not a Defendant in this case.

[3] No declaration has been filed that states that Mr. McDougal conveyed any offer by Plaintiffs to settle with Defendant Pacific Spine Specialists, LLC ("Pacific Spine"). That Defendant is owned jointly by limited liability companies owned by Defendants Dr. Keenen and Dr. Tatsumi. *See* Dkt. 14. Pacific Spine is represented in this action by counsel other than counsel for Dr. Keenen and Dr. Tatsumi. *See* Dkt. 18. Thus, there is, technically-speaking, no evidence presented that Plaintiffs ever offered to settle with Pacific Spine. The pending motion, however, was brought by all Defendants acting jointly. In their opposition, Plaintiffs never argued that Defendant Pacific Spine should be treated differently from the other Defendants. Thus, the Court considers the settlement offers made by Plaintiffs' then-counsel to counsel for Defendants Dr. Keenen and Dr. Tatsumi to include, at least implicitly, their jointly-owned entity Pacific Spine. If Plaintiffs disagree, they may seek reconsideration of this portion of the Court's Opinion and Order within two weeks or may seek relief from the Court's Judgment, entered contemporaneously, within two weeks.

PAGE 8 – OPINION AND ORDER

then-counsel confirmed these facts in his declaration in support of his motion to withdraw when he said: "On October 17, the plaintiffs made a settlement offer." Dkt. 119, ¶ 6.

Defendant Dr. Keenen, through his counsel, accepted Plaintiffs' offer on October 20, 2014. Dkt. 124, ¶ 3. Defendants Legacy and Dr. Cramer, through their counsel, also communicated their acceptance of Plaintiffs' offer to Plaintiffs' counsel on or about October 20, 2014, Dkt. 125, ¶ 7, as did Defendant Dr. Tatsumi, also through counsel, Dkt. 127, ¶ 3. Defendant Pacific Spine Specialists, LLC's acceptance was made through its owner, Dr. Keenen. Dkt. 129, ¶ 3.

Also on October 20, 2014, counsel for Defendants Dr. Soldevilla and Northwest Neurological Associates LLC ("Northwest Neurological") conveyed those Defendants' acceptance of Plaintiffs' offer to Plaintiffs' counsel. Dkt. 128, ¶ 4. Through counsel, Dr. Soldevilla requested a letter confirming that, pursuant to the terms of the settlement agreement, he had not paid any money in exchange for Plaintiffs' agreement to dismiss their claims against him. Id., ¶¶ 5-6. On November 4, 2014, Plaintiffs' counsel agreed to provide Dr. Soldevilla with the letter he requested. *Id.*, ¶ 6.

In his declaration filed on November 17, 2014, Plaintiffs' then-counsel confirmed: "All defendants ha[d] responded [to plaintiffs' settlement offers]." Dkt. 119, ¶ 6. Further, also on November 17, 2014, Plaintiffs' counsel confirmed that Plaintiffs had reached agreement with each of the Defendants, stating that, as far as he was concerned, the parties had a settlement agreement. Dkt. 126, ¶ 4. In reliance on their agreements with Plaintiffs, counsel for each of the Defendants stopped all substantive work on the case, including ceasing preparations for depositions that had been scheduled for November and December. Dkt. 125, ¶ 6; Dkt. 127, ¶¶ 5-7; Dkt. 128, ¶ 7.

Although Plaintiffs previously argued that Plaintiffs' then-counsel lacked authority to enter into these settlement agreements with Defendants, *see* Dkts. 134 and 135, Plaintiffs have since withdrawn the factual underpinning for that position. Dkt. 145. Thus, it is undisputed that Plaintiffs entered into valid and binding settlement agreements with all Defendants[4] through Plaintiffs' then-counsel, acting with authority to settle.

### B.  *Rhoades v. Beck*

In their opening memorandum in support of Defendants' Joint Motion to Enforce Settlement Agreement, Defendants argued:

> The Oregon Court of Appeals recently enforced a settlement agreement under circumstances similar to those in this case. In *Rhoades v. Beck*, 260 Or. App. 569, 320 P.2d 593 (2014), plaintiffs in a personal injury action entered into a verbal agreement with defense counsel that defendants would pay plaintiffs $21,000.00 and the amount of a PIP lien in exchange for a full and final release of all claims. Plaintiffs' counsel sent a letter to defense counsel confirming this[;] defense counsel in turn wrote a letter confirming the agreement. Plaintiffs later refused to sign the settlement agreement on the basis that an unknown Medicare lien had to be resolved. The defendant filed a motion with the trial court to enforce the settlement agreement. The motion was granted and the Court of Appeals affirmed, holding that plaintiffs' subjective understanding about the terms did not negate the objective existence of an enforceable agreement.
>
> Similarly in this case, plaintiffs offered to dismiss the claims against defendants in exchange for a waiver of all fees and costs. That offer was accepted by all defendants as set forth in counsels' declarations and attached exhibits.

Dkt. 123, at 8.

In their opposition, Plaintiffs responded: "Unlike *Rhoades*, Plaintiffs here never agreed to settle or authorized former counsel to effectuate a settlement, and Defendants' reliance [on *Rhoades v. Beck*] is misplaced." Dkt. 134, at 6. After Plaintiffs' Notice of Withdrawal of

---

[4] *But see* n. 3, *supra*, regarding Defendant Pacific Spine.

PAGE 10 – OPINION AND ORDER

Declaration of Dr. Warren G. Roberts in Opposition to Defendants' "Joint Motion to Enforce Settlement Agreement," Dkt. 145, Defendants' reliance on *Rhoades* is not misplaced.

## C.  Dr. Soldevilla's "Counterproposal"

Plaintiffs correctly state that an "acceptance must be positive, unconditional, unequivocal and unambiguous, and must not change, add to, or qualify the terms of the offer." *Wagner v. Rainier Mfg. Co.*, 230 Or. 531, 538 (1962) (quotation marks omitted). Plaintiffs also correctly note that a response to an offer that does "not embody the same terms as the earlier offer" is "not an acceptance. It [i]s instead a counteroffer." *Lang v. Oregon-Idaho Annual Conf. of United Methodist Church*, 173 Or. App. 389, 395 (2001).

Plaintiffs then assert that, even under Defendants' account of the facts, Defendant Dr. Soldevilla and his company Defendant Northwest Neurosurgical, did not accept Plaintiffs' settlement offer. Instead, Dr. Soldevilla demanded an additional letter for his file that would confirm that no money was paid by him or his company in exchange for the mutual releases and dismissal. Plaintiffs argue that this is a rejection by counter offer. *See C.R. Shaw Wholesale Co. v. Hackbarth*, 102 Or. 80, 96 (1921) ("The counter offer is construed as being in effect a statement by the offeree, not only that he will enter into the transaction on the terms stated in his counter offer, but also by implication that he will not assent to the terms of the original offer.") (citing 1 WILLISTON ON CONTRACTS § 51). Thus, conclude Plaintiffs, the supposed global settlement offer was never accepted by *all* Defendants.[5]

Plaintiffs' argument fails for two reasons. First, even if there were no final agreement reached between Plaintiffs and Dr. Soldevilla and his business, it does not affect whether a final agreement had been reached between Plaintiffs and the other Defendants. There is no evidence

---

[5] Plaintiffs are referring to Defendants Dr. Soldevilla and Northwest Neurosurgical, not to Defendant Pacific Spine. *See* n. 3, *supra*.

presented that any of the other Defendants made any counter offer to Plaintiffs. There also is no evidence that Plaintiffs' settlement offer, as communicated by Plaintiffs' then-counsel, was contingent on being accepted by all Defendants. Indeed, the only evidence is to the contrary. Thus, even if Dr. Soldevilla and his company Northwest Neurosurgical did not settle with Plaintiffs, that does not affect the finality of the settlement agreement reached between Plaintiffs and the other Defendants.

Second, and more significantly and comprehensively, Defendants' evidence is undisputed that the counter offer from Dr. Soldevilla demanding a factually accurate letter was accepted by Plaintiffs' attorney, Mr. McDougal, who had actual authority to bind his clients to this settlement. Thus, the acceptance by Plaintiffs, through their authorized then-counsel, of Dr. Soldevilla's counter offer creates a binding and enforceable settlement agreement.[6]

## CONCLUSION

Defendants' Joint Motion to Enforce Settlement Agreement (Dkt. 123) is GRANTED. This case is dismissed with prejudice. Each party shall bear its own attorneys' fees, costs, and expenses.

**IT IS SO ORDERED**.

DATED this 11th day of May, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[6] Defendants also argue that an attorney always has the "apparent" authority to accept "subsidiary" terms in a settlement agreement and need only have "actual" authority to accept its "core" terms. Defendants cite *Kaiser Foundation Health Plan v. Doe*, 136 Or. App. 566, 572-73 (1995). Defendants add that the counter offer by Dr. Soldevilla that demanded a factually accurate letter is only a subsidiary term, not a core term, of the alleged settlement agreement. The Court need not reach this question in order to resolve the pending motion because Dr. Roberts has withdrawn his assertion that Plaintiffs' then-counsel lacked settlement authority.

PAGE 12 – OPINION AND ORDER