**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**WARREN G. ROBERTS, M.D., F.A.A.N.S., an individual, and ASPEN SPINE AND NEUROSURGERY CENTER, P.C., an Oregon professional corporation**,

Plaintiffs,

v.

**LEGACY MERIDIAN PARK HOSPITAL, INC., an Oregon non-profit corporation, d/b/a/ LEGACY MERIDIAN PARK MEDICAL CENTER, an Oregon assumed business name; FRANCISCO X. SOLDEVILLA, M.D., an individual; NORTHWEST NEUROSURGICAL ASSOCIATES, LLC, an Oregon limited liability corporation**, **ROBERT L. TATSUMI, M.D., an individual; TIMOTHY L. KEENEN, M.D., an individual; PACIFIC SPINE SPECIALISTS, LLC, an Oregon limited liability corporation; and ANDREW B. CRAMER, M.D., an individual**,

Defendants.

Case No. 3:13-cv-01136-SI

**OPINION AND ORDER**

Micah D. Fargey, FARGEY LAW PC, 5 Centerpointe Drive, Fourth Floor, Lake Oswego, OR 97035. Of Attorneys for Plaintiffs.

Keith S. Dubanevich and Keil M. Mueller, STOLL STOLL BERNE LOKTING & SHLACHTER, P.C., 209 S.W. Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Defendants Legacy Meridian Park Hospital, Inc. and Andrew B. Cramer, M.D.

Robert D. Scholz and Megan L. Farris, MACMILLAN SCHOLZ & MARKS, P.C., 900 S.W. Fifth Avenue, Suite 1800, Portland, OR 97204. Of Attorneys for Defendants Northwest Neurosurgical Associates, LLC and Francisco X. Soldevilla, M.D.

Elizabeth E. Lampson and Christopher M. Parker, DAVIS ROTHWELL EARLE & XOCHIHUA, P.C., 111 S.W. Fifth Avenue, Suite 2700, Portland, OR 97204. Of Attorneys for Defendant Pacific Spine Specialists, LLC.

Karen M. O'Kasey and Calliste J. Korach, HART WAGNER, LLP, 1000 S.W. Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendant Timothy L. Keenen, M.D.

Jeffrey W. Hansen, Stephen R. Rasmussen, and Joseph A. Rohner, IV, SMITH FREED & EBERHARD, P.C., 111 S.W. Fifth Avenue, Suite 4300, Portland, OR 97204, and James L. Dumas and Michael J. Estok, LINDSAY HART, LLP, 1300 S.W. Fifth Avenue, Suite 3400, Portland, OR 97201. Of Attorneys for Defendant Robert L. Tatsumi, M.D.

**Michael H. Simon, District Judge.**

Before the Court is Plaintiffs' Motion for Relief from Judgment and/or Reconsideration. Dkt. 150. For the reasons that follow, Plaintiffs' motion is GRANTED. Judgment is hereby vacated and this case is returned to active status. The hearing set for August 6, 2015, at 1:30 P.M. in Courtroom 13B shall remain on the calendar. Instead of addressing Plaintiffs' Motion for Relief from Judgment, however, the Court will hear argument at that time on Defendants' Joint Motion to Enforce Settlement. Dkt. 123. In the meantime, the parties shall take discovery from Mark McDougal and Plaintiff Dr. Warren G. Roberts, M.D., consistent with this Opinion and Order.

## BACKGROUND

Plaintiff, Warren G. Roberts, M.D., is a neurological surgeon and the owner of Plaintiff Aspen Spine and Neurosurgery Center, P.C. In Plaintiffs' Fourth Amended Complaint, Plaintiffs

allege claims of tortious interference with economic relations, breach of contract, intentional infliction of emotional distress, racial discrimination in violation of state and federal law, and conspiracy to restrain trade and attempted monopolization in violation of state and federal antitrust laws.

Defendants assert that this lawsuit has been settled by agreement reached with Plaintiffs' then-counsel, Mr. Mark McDougal, acting within the scope of his authority. Plaintiffs disagree. After filing a motion to enforce the alleged settlement (Dkt. 123) and receiving a declaration in response from Plaintiff Dr. Roberts denying that his then-counsel had authority to settle (Dkt. 135), Defendants filed a Joint Motion to Declare Partial Waiver of Attorney-Client Privilege. Dkt. 137. The Court granted that motion in part. Dkt. 144 (Opinion and Order, dated April 10, 2015). The Court ruled:

> Within seven days from the date of this Opinion and Order, Dr. Roberts shall notify the Court and the parties whether he intends to continue to rely on his statement that he did not authorize his then-counsel to extend the alleged settlement offers (or to accept Dr. Soledevilla's counter offer). If Dr. Roberts intends to continue to assert that position, Defendants may serve a subpoena duces tecum on Plaintiffs' former-counsel, Mr. McDougal, and may take the deposition of Mr. McDougal, all in accordance with the contingencies and limitations set forth in this Opinion and Order. In lieu of such a deposition, however, upon request by any party, the Court will hold an evidentiary hearing during which Mr. McDougal may be examined by all parties, also in accordance with the limitations set forth in this Opinion and Order. If any party requests such an evidentiary hearing in lieu of a deposition, the parties shall coordinate the date and time of such a hearing with the Courtroom Deputy.

Dkt. 144, at 18.

Shortly thereafter, Plaintiffs filed Plaintiffs' Notice of Withdrawal of Declaration of Plaintiff Dr. Warren G. Roberts in Opposition to Defendants' "Joint Motion to Enforce Settlement Agreement." Dkt. 145. After reviewing that notice, the Court concluded, apparently

erroneously, that Plaintiffs were withdrawing their position that Plaintiffs' former attorney, Mark McDougal, did not have Plaintiffs' authority to settle this case on the terms that Mr. McDougal extended to defense counsel, which were then accepted by Defendants. Based on that erroneous assumption, the Court granted Defendants' Joint Motion to Enforce Settlement. Dkt. 148 (Opinion and Order dated May 11, 2015). The Court then entered Judgment dismissing this case. Dkt. 149.

Plaintiffs promptly moved for relief from judgment. Dkt. 150. In support of Plaintiffs' motion, Plaintiffs filed another Declaration of Plaintiff Dr. Warren G. Roberts. Dkt. 151. In that declaration, Dr. Roberts stated, among other things:

- "I would never have made such an offer to the defendants." (¶ 7.)
- "I would never settle this case without putting a final stop to the defendants' wrongful actions." (¶ 11.)

Dkt. 151, ¶¶ 7, 11. Defendants oppose Plaintiffs' motion for relief from judgment. Dkt. 153. In reply, Plaintiffs explain:

> Plaintiffs never made any statement or filed any papers indicating an abandonment of their position on the issue of settlement authority – Plaintiffs have consistently pointed out that there is no evidence that Mr. McDougal had the specific scope of settlement authority claimed by Defendants and required under Oregon law.

Dkt. 159, at 2. Plaintiffs add that "waiver of the attorney-client privilege requires a represented party both to take an 'affirmative act' and to be the party to 'put the privileged information at issue.'" *Id.* at 2. Plaintiffs assert that they have not taken such an "affirmative act" and are not the parties who put "privileged information at issue." *Id.* at 2-3.

**DISCUSSION**

As discussed in the Court's Opinion and Order dated April 10, 2015 (Dkt. 144), at pages 14-17, a waiver of the attorney-client privilege may be found "by implication from client

conduct that is inconsistent with any reasonable claim of confidentiality and that would make maintenance of the privilege unfair." 2 RICE, ATTORNEY-CLIENT PRIVILEGE § 9:24 at 89 (footnote omitted) (citing cases). As this treatise further explains:

> When the client makes the communications with counsel a substantive issue in the litigation, courts have consistently held that the attorney-client privilege protecting those communications is waived. Courts often refer to this type of waiver as an "at issue" waiver or an implied waiver. A client will be required to disclose privileged attorney-client communications whenever she is perceived as placing, directly or indirectly, those communications "at issue" in the cause of action. The principle upon which this implied waiver concept is based is simple "fairness."

*Id.* § 9:45 at 277-79 (footnote omitted).

Professor Rice's treatise continues:

> When clients have injected issues into actions, the fair resolution of which required the disclosure of confidential attorney-client communications, courts have concluded that these acts waived the attorney-client privilege protection. The scope of these waivers has been sufficiently broad to give the opposing party a *fair opportunity* to examine all communications that may be *pertinent* to those issues. The *Hearn v. Rhay*[, 68 F.R.D. 574, 577 (E.D. Wa. 1975),] opinion that established the precedent for implied waivers indicated that such waivers only extend to communications that are "vital" to the opposing party's ability to fairly present its case. "Vital implies a level of probative value significantly greater than mere relevance," and such a standard would be consistent with the belief that implied waivers must be "closely tailored" to protect the privileges at issue. Nevertheless, courts need to be primarily concerned with not permitting the privilege holder from placing the opposing party in an untenable position by injecting an issue into the litigation and then hiding behind the privilege to preclude its fair and complete resolution.

*Id.* § 9:55 at 480 (footnotes omitted) (emphasis in original).

The U.S. Court of Appeals for the Ninth Circuit has adopted this doctrine of implied waiver of the attorney-client privilege. In the context of a federal habeas petition raising several claims, including ineffective assistance of counsel, the Ninth Circuit observed:

> "[T]he doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege." [*Developments in the Law—Privileged Communications*], 98 Harv. L. Rev. [1450,] 1630 [(1985)]. The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. *See, e.g.*, [*United States v.*] *Amlani*, 169 F.3d [1189,] 1195 [(9th Cir. 1999)] (holding that courts must evaluate "whether allowing the privilege would deny the opposing party access to information vital to its defense" (internal quotation marks omitted)); *Chevron* [*Corp. v. Pennzoil Co.*], 974 F.2d [1156,] 1162 [(9th Cir. 1992)]. Essentially, the court is striking a bargain with the holder of the privilege by letting him know how much of the privilege he must waive in order to proceed with his claim.
>
> Three important implications flow from this regime. The first is that the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. . . .
>
> Second, the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition…..
>
> Finally, if a party complies with the court's conditions and turns over privileged materials, it is entitled to rely on the contours of the waiver the court imposes, so that it will not be unfairly surprised in the future by learning that it actually waived more than it bargained for in pressing its claims.

*Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003); *see also* JOSEPH M. MCLAUGHLIN, JACK B. WEINSTEIN, AND MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 503.41[1] (2d ed. 2014) (discussing the doctrine of implied waiver). In addition, the leading treatise on Oregon evidence law is similar. *See* LAIRD C. KIRKPATRICK, OREGON EVIDENCE § 503.13[1], § 503.13[3] (6th ed. 2013).

Applying these principles to the facts before the Court, Defendants present evidence that they reached a settlement agreement with Plaintiffs, acting through Plaintiffs' then-counsel, and

Defendants seek to enforce that agreement. Defendants' evidence includes declarations from defense counsel stating that Plaintiffs' then-counsel, Mr. McDougal, had represented that Plaintiffs would settle the lawsuit on certain terms that Mr. McDougal described and that Defendants accepted those terms.

In opposing that motion, Plaintiffs first responded with Dr. Roberts's declaration asserting that Mr. McDougal did not have Plaintiffs' authority to make the representations that Mr. McDougal made. Dkt. 135. Plaintiffs, through Dr. Roberts's declaration, thereby injected the defense that Mr. McDougal did not have the actual authority needed to bind Plaintiffs to a settlement. Thus, Plaintiffs placed "at issue" whether Mr. McDougal had actual authority from his clients to extend the settlement offers that he made.

After the Court gave Dr. Roberts an opportunity to withdraw "his statement that he did not authorize his then-counsel to extend the alleged settlement offers," *see* Dkt. 144, at 18, Dr. Roberts gave notice of his withdrawal of his declaration. Dkt. 145. Apparently, however, Plaintiffs continue affirmatively to contend that Mr. McDougal did not have authority to settle Plaintiffs' claims. Not only do Plaintiffs continue to advance this argument in their pending motion, Dr. Roberts recently submitted a second declaration reaffirming that he did not authorize Mr. McDougal to extend any such settlement offer. *See* Dkt. 151, ¶¶ 7, 11. These are affirmative acts by Plaintiffs that put the attorney-client privilege at issue (namely, whether Plaintiffs in fact authorized Mr. McDougal to extend settlement offers to Defendants).

Moreover, the only way for Defendants to be able fairly to refute Plaintiffs' argument and Dr. Roberts's statements in support, including his assertions in his most recent declaration (Dkt. 151), is to inquire into otherwise privileged communications. It simply would not be fair to allow Plaintiffs, in opposing Defendants' efforts to enforce what they contend is an authorized

settlement agreement, to rely on Dr. Roberts's statements that he did not authorize his attorney to present a settlement offer to counsel for Defendants while also allowing Plaintiffs to invoke their attorney-client privilege to prevent Defendants from attempting to refute those statements.

In applying the doctrine of implied waiver by claim assertion, also called an "at issue waiver," a court must be careful to ensure that this concept is used only to prevent the type of unfairness that is distinguishable from "the unavoidable unfairness generated by every assertion of privilege." *Developments in the Law—Privileged Communications*, 98 HARV. L. REV. 1450, 1642 (1985). This Court has done so and has reached the same conclusion that has been reached in other similar cases. *See, e.g., Rubel v. Lowe's Home Centers, Inc.*, 580 F. Supp. 2d 626, 628-29 (N.D. Ohio 2008) (holding that, in response to the defendant's motion to enforce settlement agreement, the plaintiff waived attorney-client privilege by voluntarily testifying by affidavit and in deposition that he neither agreed to settle nor authorized his attorney to do so); *Hodges v. Potter*, 2005 WL 6336682, at *2 (D.D.C. Aug. 31, 2005) (holding that, in response to the defendant's motion to enforce settlement agreement, the plaintiff waived attorney-client privilege when he "voluntarily disclosed in his opposition the partial content of his previously privileged communications with his attorney in an attempt to defend against enforcement of the settlement agreement"); *Hartman v. Hooks-Superx, Inc.*, 42 F. Supp. 2d 854, 855 (S.D. Ind. 1999) (holding that, in response to the defendant's motion to enforce settlement agreement, the plaintiff may not continue to invoke attorney-client privilege while also maintaining that his attorney lacked settlement authority).

Thus, because Plaintiffs continue to invoke the attorney-client privilege while also maintaining that their attorney, Mr. McDougal, lacked settlement authority, Plaintiffs have impliedly waived their attorney-client privilege on that issue. Further, Dr. Roberts has already

been given an opportunity to decide whether to continue to assert his privilege in opposition to Defendants' motion to enforce settlement. Thus, waiver is found and limited but appropriate discovery into previously privileged communications between Dr. Roberts and his counsel will be permitted.

**CONCLUSION**

Plaintiffs' Motion for Relief from Judgment and/or Reconsideration (Dkt. 150) is GRANTED. Judgment is hereby vacated and this case is returned to active status. The hearing set for August 6, 2015, at 1:30 P.M. in Courtroom 13B shall remain on the calendar. Instead of addressing Plaintiffs' Motion for Relief from Judgment, however, the Court will hear argument at that time on Defendants' Joint Motion to Enforce Settlement. Dkt. 123. In the meantime, Defendants may serve a subpoena *duces tecum* on Plaintiffs' former-counsel, Mr. McDougal, and may take limited depositions of both Mr. McDougal and Dr. Roberts, consistent with this Opinion and Order. The Court finds that Plaintiffs have impliedly waived, by conduct that is inconsistent with any reasonable claim of confidentiality and that would make maintenance of the privilege unfair, the attorney-client privilege between Mr. McDougal and Plaintiffs with regard to whether Plaintiffs authorized Mr. McDougal (a) to extend the specific settlement offers that Defendants contend were extended to and accepted by Defendants or (b) to accept Dr. Soldevilla's counteroffer. In lieu of such depositions, however, upon request by any party, the Court will hold an evidentiary hearing during which Mr. McDougal and Dr. Roberts may be examined in Court by all parties, consistent with this Opinion and Order. If any party requests such an evidentiary hearing in lieu of depositions, the parties shall notify the Courtroom Deputy.

/ / /

/ / /

/ / /

**IT IS SO ORDERED**.

DATED this 2nd day of July, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge